NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW HOPE PIPE LINERS, LLC, : <br> : <br> Plaintiffs, : <br> : <br> v. : <br> : <br> COMPOSITES ONE, LCC, CURRAN : <br> COMPOSITES, INC., d/b/a COOK : <br> COMPOSITES AND POLYMERS, Robert : <br> CANNON, and Eric KOETTKER : <br> : <br> Defendants. : <br> : | Civ. No. 09-3222 <br><br> OPINION & ORDER |

THOMPSON, U.S.D.J.,

INTRODUCTION

This matter comes before the Court upon Defendants' Motions to Dismiss [8] & [11]. The motions have been decided upon the papers without oral argument. For the reasons stated below, the Motions are GRANTED IN PART and DENIED IN PART.

BACKGROUND

Plaintiff filed this action in New Jersey state court on June 3, 2009, and Defendants removed the suit to this Court on July 1 on the basis of diversity of citizenship. By consent of the parties, Defendants' time to answer the Complaint was extended to September 8, at which point Defendants filed these motions to dismiss. For the purposes of deciding these motions, this Court must accept the following alleged facts—which are set out in the Complaint—as true.

Plaintiff is a company that installs pipe lining, a process in which it uses isophthalic resin. For several years, Plaintiff has been obtaining such resin from Defendant Composites One,

1

which in turn obtains its resin from various manufacturers. In the past, Plaintiff would generally rely on price quotes provided by Composites One when bidding on pipe lining projects. In conformity with this practice, at some point around August 2008 Composites One quoted a particular isophthalic resin at a certain price to Plaintiff. On the basis of this quote, Plaintiff submitted various bids in the hope of obtaining pipe lining jobs. Subsequently, Composites One told Plaintiff that the price of the resin quoted had increased. However, Composites One also told Plaintiff that it could supply a different isophthalic resin—one commonly referred to as "3141 Resin"—at the quoted price and that this different resin would perform just as well as the resin originally quoted. 3141 Resin is produced by Defendant Cook Composites and Polymers ("CCP").

Both Composites One and CCP represented to Plaintiff that 3141 Resin was suitable for cured-in-place ("CIP") pipe rehabilitation systems, the type of pipe lining projects that Plaintiff performs. Defendant Robert Cannon, a manager at Composites One, told Plaintiff he would provide a letter guaranteeing the installation of 3141 Resin. Defendant Eric Koettker, a representative for CCP, sent Plaintiff a letter asserting that 3141 Resin was appropriate for CIP installations. CCP also gave Plaintiff a Certification stating that 3141 Resin was appropriate for CIP installations. Relying on these representations, Plaintiff decided to purchase and use 3141 Resin in its projects.

However, after using 3141 Resin in several projects, Plaintiff discovered that the resin was not suitable for CIP pipe lining projects. As a result of problems with the installation of CIP pipe liners coated with 3141 Resin, Plaintiff was forced to repair or replace many pipe lining runs. Based on these problems, Plaintiff has sued Defendants, alleging common law fraud, negligent misrepresentation, violations of the New Jersey Consumer Fraud Act, promissory

estoppel, breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, and a products liability claim under the New Jersey Product Liability Act.  Defendants have now moved to dismiss Plaintiff's claims.

## ANALYSIS

I. Standard of Review

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss any claim upon which relief may not be granted.  In considering such a motion, courts undertake a two-step analysis of the Complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)).  For purposes of resolving a motion to dismiss, "plausible" does not mean "probable," but it requires more than "sheer possibility."  Iqbal, 129 S.Ct. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).  In other words, if the factual allegations are more likely explained by lawful behavior than illegal activity, then the complaint should be dismissed.  Iqbal, 129 S.Ct. at 1950.

II. Claims Subsumed by the New Jersey Products Liability Act

Defendants argue that the New Jersey Products Liability Act ("PLA") subsumes six of the seven other claims in the Complaint and that, consequentially, those six claims must be dismissed.  New Jersey courts have interpreted the PLA as establishing a sole statutory cause of action "encompassing virtually all possible causes of action relating to harms caused by consumer and other products."  In re Lead Paint Litig., 191 N.J. 405, 436-37 (2007); accord

Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991). This rule, that the PLA "subsumes" all other causes of action, finds its statutory basis in the definitional section of the Act, which explains, "'[p]roduct liability action' means any claim or action brought by a claimant for harm caused by a product, *irrespective of the theory underlying the claim*, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3) (emphasis added). Section 2 of the Act compliments this broad definition of "product liability action," by stating that such an action may only be proven through the traditional strict liability theory for products liability claims.[1]

     Taken literally, the language of the PLA is broad—so broad in fact, that a literal reading must be discarded. For example, whenever somebody commits a battery with a commercially-made object, the victim suffers "harm caused by a product," but nobody maintains that the PLA has subsumed the tort of battery. It is therefore unsurprising that, when deciding whether or not the PLA has subsumed a particular claim, courts do not simply determine whether or not the victim's injury was literally "caused by a product." Instead, courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action. See, e.g., In re Lead Paint Litig., 191 N.J. at 437 ("Were there any doubt about the *essential nature* of the claims asserted by plaintiffs, a careful reading would demonstrate that *they sound in products liability* causes of action.") (emphasis added). So, for example, if a seller or manufacturer fails to warn a buyer about a product's adverse effects, the buyer's lawsuit must be brought as a PLA defective

---

[1] Section 2 of the PLA states:
     A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.
N.J.S.A. § 2A:58C-2.

4

warning case, not as a fraud case alleging a material omission.  See Brown ex rel. Estate of Brown v. Phillip Morris, 228 F. Supp. 2d 506, 516-17 (D.N.J. 2002).  As another example, if a product malfunctions and causes injury, the victim's case must proceed under a PLA "defective manufacture" theory, not under a "violation of implied warranties" theory.  Thomas v. Ford Motor Co., 70 F. Supp. 2d 521, 528 (D.N.J. 1999); see also Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 398 (App. Div. 1991) (barring an implied warranty claim where the Plaintiff claimed that a truck without a backup signal was designed defectively).  In summary, if the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the PLA governs and the other claims are subsumed.  But when the "essential nature" of the claim is not a products liability claim, the plaintiff may maintain a separate cause of action.

  This Court's decision to adopt an "essential nature" view of the PLA rather than a literal reading of the statutory language is further supported by the New Jersey Supreme Court's decision in Jurado v. Western Gear Works. 131 N.J. 375 (1993).  In that case, the New Jersey Supreme Court held that the PLA did not subsume claims based on a plaintiff's misuse of a consumer product.  Id. at 384.  By so holding, the court necessarily rejected a literal reading of the statutory language.  Interpreted literally, the PLA would apply to all harms caused by products, regardless of whether or not the product was being used as intended.  The court instead interpreted the statute as simply clarifying and narrowing the number of claims that could be brought for injuries caused by defective products that are used as intended.  This means that the PLA does not preclude all non-PLA claims which happen to involve a "product" that causes "harm."  Rather, the PLA refines the process for pursuing traditional products liability actions.

With these observations in mind, we turn to an analysis of the various claims alleged in the Complaint. Most of those claims could be characterized as "representation-based" claims— i.e., they are based on allegations that Defendants made assertions about the quality of their goods and that these assertions induced Plaintiff to purchase 3141 Resin. Specifically, the claims for common law fraud, negligent misrepresentation, violation of the Consumer Fraud Act, promissory estoppel, and breach of the implied warranty of fitness for a particular purpose are all representation-based. To determine whether these claims are subsumed by the PLA, this Court must determine whether, in their "essential nature," they are products liability actions—i.e., claims regarding design defects, manufacturing defects, or warning defects. Now, if Plaintiff was claiming that Defendants violated some kind duty to disclose by failing to alert Plaintiff as to the possible consequences of using 3141 Resin, then this Court might have reason to construe this as a "failure to warn" claim subsumed by the PLA. However, Plaintiff is instead alleging that the Defendants made affirmative misrepresentations as to the suitability of 3141 Resin. This is quite distinct from the traditional notion of what constitutes a products liability claim. Traditional products liability claims arise out of the situation where a product fails to perform as would ordinarily be expected in the absence of any specific promises made by the seller or manufacturer. Representation-based claims, by contrast, deal with the situation where a product does not conform to specific representations made directly to the buyer. Since representation-based claims and products liability claims deal with two distinct categories of unlawful conduct rather than two different theories covering the same underlying conduct, the PLA does not subsume representation-based claims. To use the language that some other courts have used, the Plaintiff here is not guilty of "recasting" a products liability claim as a different tort. See Walus v. Pfizer, Inc., 812 F. Supp. 41, 45 (D.N.J. 1993); Brown, 228 F. Supp. 2d at 517. Since

representation-based harms are distinct from products liability-type harms, the PLA does not subsume those claims.

However, the PLA does subsume one of Plaintiff's claims—Count Six, the claim for breach of implied warranty of merchantability. A close reading of the language of the Complaint is sufficient to demonstrate that this claim and the products liability claim are in essence the same. Count Six asserts that the 3141 Resin "was not fit for the ordinary purpose for which that resin is used." (Compl. 12.) The PLA count is based on the similar allegation that "[t]he 3141 Resin was not reasonably fit or suitable for its intended purpose." (Id. at 14.) Both claims center on the notion that the 3141 Resin did not perform as well as such a product is generally supposed to perform. These claims do not concern the Defendants' representations but rather the question of whether the 3141 Resin measured up to common expectations. These are classic products liability-type claims, and as such, the PLA is the sole cause of action. The Plaintiffs may not pursue a theory of breach of implied warranty of merchantability, and consequentially the Sixth Count of the Complaint will be dismissed.

### III. The Adequacy of Plaintiff's PLA Claims

Defendant CCP challenges Plaintiff's PLA claim as lacking sufficient factual allegations to raise Plaintiff's right to relief beyond a speculative level. To make out a claim under the PLA, a plaintiff must prove (1) that the product was not fit for its intended purpose, and (2) that the deficiency resulted from either a manufacturing defect,[2] a defective warning, or a defective design. N.J.S.A. § 2A:58C-2. To survive a motion to dismiss, Plaintiff must allege specific facts sufficient to support a plausible inference that these elements exist. See Iqbal, 129 S.Ct. at 1949-50.

---

[2] A product has a manufacturing defect if it "deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J.S.A. § 2A:58C-2

7

Plaintiff alleges that Defendants told Plaintiff that 3141 Resin was fit for CIP pipe installations and that the 3141 Resin supplied ultimately did not work as represented. (Compl. ¶¶ 12-13, 16.) From these allegations, it is plausible to infer the first element of a PLA claim—that 3141 Resin was intended for CIP pipe installations but that the product was ultimately not fit for that purpose. These allegations also are sufficient to support the inference that the 3141 Resin suffered from a design or manufacturing defect.[3] Whenever a purchaser buys a product based on the seller's explicit representation as to the product's capabilities and the product subsequently fails to perform as promised, it is plausible to infer that the product was defective—either by manufacture or design. In fact, accepting these allegations as true, it must be the case either that the product was defective in some way or else that the seller did not accurately describe the product to the buyer. A buyer caught in this position cannot be expected to know which of these two possibilities is more likely, but such a buyer does have plausible grounds to believe that he or she has been unlawfully harmed. This scenario is therefore different from Iqbal and Twombly, where in each case there was a perfectly legal explanation for the alleged unlawful conduct and that explanation was much more likely than the plaintiff's theory. See 129 S.Ct. at 1951-52; 550 U.S. at 565-570. While Plaintiff's allegations regarding the PLA claim are thin, they are sufficient to raise the expectation that illegal conduct may be discovered.[4] This is all that the Federal Rules require.

IV. Plaintiff's Claim for Breach of Express Warranty

---

[3] Plaintiff does not allege that the 3141 Resin it used suffered from a warning defect.

[4] Plaintiff's PLA claim is on even firmer footing insofar as it pleads a *design* defect specifically. The Complaint states that "the 3141 Resin was not a true isophthalic acid-based resin, but was a blend of various resin chemistries that was of inferior quality for the purposes of CIP pipe lining installation." (Id. at ¶ 15.) So far as this Court can tell, Plaintiff here alleges that 3141 Resin is made out of materials that would not hold up for the job that the resin was supposed to do. This allegation gives additional support to the inference that 3141 Resin was designed in a defective manner.

Defendant CCP also seeks dismissal of Plaintiff's Breach of Express Warranty claim, arguing that Plaintiff has not set forth sufficient factual allegations. An express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or by "[a]ny description of the goods which is made part of the basis of the bargain." N.J.S.A. § 12A:2-213. Therefore, to plead a claim for breach of express warranty, a plaintiff must set forth facts sufficient to support a plausible inference that (1) Defendant(s) made an affirmation, promise, or description that became part of the basis of the bargain, and (2) the goods ultimately did not conform to the affirmation, promise, or description.

Plaintiff alleges that Defendants made several affirmations and promises. The Complaint states that Defendant Composites One "assured New Hope that it could offer another isophthalic resin to New Hope at that same quoted unit price, which would achieve the same performance" (Compl. ¶ 10), that "Composites One and CCP assured and represented to New Hope that the 3141 Resin was an isophthalic resin with the same suitability and performance for CIP installations as the resin product New Hope had been buying," (Id. at ¶ 12), and that CCP "provided New Hope with a Certification of Compatibility and Suitability for Use with Cured In Place Pipe Thermoplastic Felt Materials" (Id. at ¶ 13.) The fact that Defendants made these representations in response to New Hope's concerns about the effectiveness of 3141 Resin supports an inference that these representations became part of the bargain. Finally, the allegation that Plaintiff was forced to repair and replace a "substantial number of pipe lining runs" treated with 3141 Resin supports an inference that the resin did not conform to the representations. (Id. at ¶ 16.) In summary, Plaintiff has pled sufficient factual material to support its claim for Breach of Express Warranty.

V. <u>Plaintiff's Fraud Claims</u>

Defendants seek dismissal of Plaintiff's various fraud claims, arguing that they are not pled with sufficient specificity. In pleading a fraud claim, the Complaint must "state with particularity the circumstances constituting fraud," but may aver more generally any relevant conditions of mind, such as intent. Fed. R. Civ. P. 9(b). Courts have interpreted this rule to mean that "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." <u>Frederico v. Home Depot</u>, 507 F.3d 188, 200 (3d Cir. 2007) (citing <u>Lum v. Bank of America</u>, 361 F.3d 217, 223-24 (3d Cir. 2004)). The purpose here is "to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" <u>Id.</u>

Plaintiff alleges three different fraud claims—common law fraud, negligent misrepresentation, and violation of the New Jersey Consumer Fraud Act ("CFA"). These claims have slightly different constitutive elements, but they basically share three core characteristics: (1) a misrepresentation, (2) reliance thereon, and (3) a resulting loss.[5] In this case, the Court finds that the Complaint alleges sufficient factual detail to satisfy the heightened pleading standards. The statements quoted above with regard to the creation of express warranties (<u>see</u> Part IV <u>supra</u>) are the same statements that Plaintiff alleges were falsely made. Paragraph 10 of the Complaint alleges that after Composites One said, in August 2008, that its prices were increasing on Plaintiff's previously-used resin, the company assured Plaintiff that it could offer a

---

[5] Common law fraud consists of "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." <u>Frederico</u>, 507 F.3d at 200 (citing <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 610 (1997)). Negligent misrepresentation consists of "an incorrect statement, negligently made and justifiably relied on, which results in economic loss." <u>McClellan v. Feit</u>, 376 N.J. Super. 305, 313 (App. Div. 2005) (quoting <u>Kaufman v. i-Stat Corp.</u>, 165 N.J. 94, 109 (2000)). A claim under the CFA requires the Plaintiff to prove (1) an unlawful commercial practice, such as "fraud, false pretense, false promise, [or] misrepresentation," (2) loss, and (3) that the unlawful conduct caused the loss. <u>Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.</u>, 192 N.J. 372, 389 (2007) (quoting N.J.S.A. § 56:8-2).

comparable resin at the same price. Paragraph 12 makes two specific allegations: that Cannon—a manager for Composites One—stated he would provide a letter guaranteeing the installation of 3141 Resin, and that Defendant Koettker—a CCP representative—sent Plaintiff a letter on August 18, 2008 in which he attested to the propriety of using Resin 3141 in CIP installations. Paragraph 13 alleges that Defendant CCP provided a written certification which makes similar attestations, and it quotes that certification at length. These references to specific statements "inject precision" into Plaintiff's allegations, enabling Defendants to identify the misconduct with which they are charged. They identify the speakers at issue and give notice as to when the alleged misrepresentations occurred. Subsequent paragraphs of the Complaint sufficiently explain the reliance and harm that Plaintiff suffered as well. See Part IV, supra (discussing the Breach of Express Warranty claim). Therefore, this Court concludes that Plaintiff has pled the circumstances of its fraud claims with the required specificity.

The knowledge and intent elements of Plaintiff's fraud claims do not need to satisfy Rule 9(b)'s heightened standards, but they still must satisfy the general pleading standards set forth in Rule 8(a) as interpreted in Twombly and Iqbal. In this case, the Complaint—read as a whole—provides sufficient factual allegations to support a plausible inference that Defendants acted with the requisite knowledge and intent. Put simply, given the fact that Composites One is in the business of selling 3141 Resin, and that CCP is in the business of manufacturing 3141 Resin, it is reasonable to infer that those entities and their employees were either aware of the resin's properties and misrepresented them or else that they acted with reckless disregard in stating that 3141 Resin was appropriate for CIP lining jobs without assuring themselves of the accuracy of those statements. See In re Blum, 109 N.J. Super. 125, 129 (App. Div. 1970).

VI. Claims Against Individual Defendants

Defendants Composites One and Cannon seek to have all claims against Cannon and Koettker dismissed. They point out that the Complaint does not state that any of the alleged harms were intended to benefit Cannon personally, that the Complaint does not allege that Cannon was an officer or director, and that all of the acts of which Cannon is accused were made in the course and scope of employment. However, none of these facts would absolve Cannon or Koettker of liability. See Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 762 (1989). As discussed above, the allegations in the Complaint specifically identify acts committed by Cannon and Koettker. Therefore, the claims against those defendants are sufficient to state a claim.

VII.     Punitive Damages

Finally, Defendants Composites One and Cannon seek to have Plaintiff's claims for punitive damages dismissed. They argue that Plaintiff has not alleged facts sufficient to support an inference that Defendants acted with the requisite "evil-minded intent" or "wanton and wilful disregard of the rights of another." Nappe v. Anschelwitz, 97 N.J. 37, 49 (1984). Such intent may be proven by "showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences." Id. (quoting Berg v. Reaction Motors Div., Thiokol Chemical Corp., 37 N.J. 396, 414 (1962)). Given the facts alleged, it is possible to infer that Plaintiffs may be able to make such a showing at trial. Therefore, this Court will not dismiss Plaintiff's claim for punitive damages at this stage.

## CONCLUSION

In light of these conclusions, it is ORDERED, on this 25th day of November, 2009, that Defendants' Motions to Dismiss [8] & [11] are GRANTED IN PART; and

It is further ORDERED that the Sixth Count of the Complaint—the claim for breach of the implied warranty of merchantability—is DISMISSED; and

It is further ORDERED that all of Defendants' other requests are DENIED.

*/s/ Anne E. Thompson*_____

ANNE E. THOMPSON, U.S.D.J.
